## JOSEPH STARBUCK *versus* NEW ENGLAND MARINE INSURANCE COMPANY.

If a vessel, in the course of her voyage, put into a port where repairs can be made,
and afterwards sail therefrom with a defect in her bottom, produced during the
voyage by the perils of the seas, and which causes her to founder, the insurers are
liable for the loss, unless the captain had reasonable cause to suspect the existence
of the defect when the vessel was in such port, or had reasonable cause to believe
that she could not proceed safely home without having the same repaired.

ASSUMPSIT on a policy of insurance, dated November 1st,
1832, on the ship Loper, of Nantucket, and her outfits, bound
on a whaling voyage.

At the trial, before *Putnam* J., it appeared, that the Loper
sailed from Nantucket, on the 24th of November, 1832, and
pursued her voyage into the Pacific Ocean ; that while there,
in November 1833, she experienced a violent shock, which
caused her to tremble and created much alarm among her
crew ; that she continued, however, whaling until the 8th of
March, 1835, when she put into Talcahuana, to prepare for
her homeward voyage ; that she did not leak more than ships
frequently do ; that such repairs were made upon the vessel,
at Talcahuana, as the master supposed to be necessary, but
that her bottom was not repaired or examined ; and that, on
the 24th of March, she sailed from Talcahuana for Nantucket,
and, on the 20th of the following May, foundered and was
abandoned by her crew, and the whole property insured was
lost.

In order to show adequate cause for the foundering of the
vessel, the plaintiff introduced evidence tending to prove that

it was occasioned by a blow received from some horned fish in November 1833.

The defendants contended, that the plaintiff was not entitled to recover, inasmuch as the ship, after receiving such blow, and during the existence of the defect caused thereby, put into the port of Talcahuana, where it could have been discovered and repaired, but left that port without repairing it.

The jury were instructed, that if the vessel sailed fiom Talcahuana with a defect in her bottom, which afterwards caused her loss, yet that the defendants were liable therefor, unless the captain had reasonable cause to suspect the existence of the defect at the time when the vessel was at Talcahuana, or had reasonable cause to believe, that she could not proceed safely home without having the same repaired.

The jury returned a verdict for the plaintiff for a total loss.

If the instructions given to the jury were erroneous, the verdict was to be set aside, and a new trial granted ; otherwise, judgment was to be rendered on the verdict.

*W. D. Sohier*, for the defendants, cited *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227 ; *Hazard* v. *New England Mar. Ins. Co.* 1 Sumner, 218 ; *S. C.* 8 Peters, 558 ; *Taylor* v. *Lowell*, 3 Mass. R. 331 ; *Putnam* v. *Wood*, 3 Mass. R. 485.

*C. P. Curtis* and *B. R. Curtis*, for the plaintiff, cited *Phillips* v. *Headlam*, 2 Barn. & Adolph. 380.

*Per Curiam.* It is suggested on the part of the assured, that the loss arose from a blow received sixteen months before, which created some alarm at the time, but not causing a leak, was not much thought of afterwards. The loss was subsequently attributed to it, because there was no other apparent cause. The defendants contend, that the master should have examined the ship at Talcahuana, and repaired her. The argument is, that the assured is bound to have the ship seaworthy at the commencement of the voyage, and if she is not, the insurers are not responsible for subsequent loss, even if it arises from another cause, as, if she has not proper papeis, or is struck by lightning ; that this is a condition precedent, without which no liability attaches. This principle is correct ; but the defendants go further and contend that she is to be seaworthy, not only at the beginning, but during every stage of the

voyage.  But the obligation of the assured to keep her seaworthy depends upon different considerations and imposes different duties.  If the assured does not make her seaworthy at first, she is not a vessel, not capable of being navigated ; and the contract being made under mutual mistake, the conse quence follows, that the subject matter, respecting which the insurance was made, did not exist, and neither party is bound. But if she meets with an accident after the beginning of the voyage, as the very contract of insurance supposes that she may, it is the duty of the assured to make repairs.  But the nature and extent of this duty are to depend on circumstances and have a reasonable construction ; and this was the ground of decision in *Paddock* v. *Franklin Ins. Co.*  If the ship become unseaworthy on the voyage, it is the duty of the owner, as soon as he discovers it, to make her good ; but he cannot do it before he discovers it.  If he does not repair when he reasonably ought to do so, and a loss arises from it, the assured cannot recover ; because it is not a loss by any of the perils insured against ; but if the loss arises from another cause, he may recover.  The difference is this ; if the vessel is not seaworthy at first, the policy never attaches ; in the other case, the insurers, having become responsible, continue liable for all losses not arising from the fault of the owners. There are often latent defects at the commencement of the voyage, and distressing cases happen, in consequence, because the policy does not attach.  The counsel for the defendants contend, that the law is the same if the injury took place in the course of the voyage ; but we cannot accede to this doctrine.  There is nothing in the opinion in *Paddock* v. *Franklin Ins. Co.* that warrants the position.  A distinction is there taken between unseaworthiness at the beginning, which is a breach of warranty, and a defect arising on the voyage, which is not repaired through the fault of the owner, and for which the owner is responsible if the loss is from that cause.  But the owner, or his agents, must know of the defect or there is no fault.  Suppose an accident occurs at sea, what is the master to do ?  He is to ascertain, as soon as he can, the extent of the damage, and to take into consideration the relative distances of ports, and where he can repair, and the course of

winds, trade winds, &c., and to exercise his best judgment, under a view of all the circumstances. If the ship is sinking, he must go to the port he can reach soonest ; if not, it may be most reasonable to go to a more distant port, where he can get more effectual and permanent repairs. He must exercise a sound judgment, for the best interests of all concerned.

The question then is, whether the instructions to the jury were right ; and we are of opinion that they were. An accident happened, in consequence of which there was much trembling of the vessel ; and it was supposed she had been struck by a sword fish or a whale. If she could then have been examined, it would have been the duty of the master, to have had it done ; but she was in the ocean, and an examination could not be made. After a long trial, however, it was found, she did not leak. Then was the master bound, at all events, to heave her out when she arrived at a port ? We think he was merely bound to exercise sound discretion.

But even if he had hove her down, and not repaired her, and afterwards she sunk, the defect not being discovered, it is argued that the insurer would be discharged. If unseaworthiness at the time of sailing from Talcahuana, was a condition precedent, this would undoubtedly be correct, because then the assured would take the risk of latent and unknown defects. But we think it was not so, and that the master must have known, or have had reason to believe, that there was a defect, in order to throw the risk from this cause upon the assured.